FILED

MAR 23 2011

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

THOMAS WEAVER,

Civil No. 07-1763-AC

            Petitioner,

FINDINGS AND RECOMMENDATION

    v.

MARK NOOTH, Superintendent,
Snake River Correctional Institution,

        Respondent.

NELL BROWN
Assistant Federal Public Defender
101 SW Main Street
Suite 1700
Portland, OR 97204

        Attorney for Petitioner

JOHN R. KROGER
Attorney General
KRISTEN E. BOYD
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301

        Attorney for Respondent

1 - FINDINGS AND RECOMMENDATION -

ACOSTA, Magistrate Judge.

Petitioner, an inmate at the Snake River Correctional Institution, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Petition for Writ of Habeas Corpus should be DENIED.

## BACKGROUND

From approximately 1989 to 1996, Petitioner lived with his girlfriend and her two sons and one daughter in a home in North Bend. In early 1996, Petitioner and his girlfriend separated and lived apart. At the time of the separation, the daughter was 9 years old.

At age 11, after moving several times with her mother, the daughter went to live with her maternal grandparents. Petitioner and his girlfriend reunited. When the daughter learned she was to return living with her mother and Petitioner, the daughter confided in her grandmother that she did not want to be around Petitioner. She disclosed to her grandmother that she was afraid because Petitioner had previously molested her while she was in the first through third grandes. The daughter asked her grandmother not to tell anyone because Petitioner had threatened to kill her if she told anyone.

The grandmother contacted the police. A police officer and an SCF employee interviewed the daughter. At the interview, she disclosed that Petitioner would regularly send her brothers outside to play, lock the door, and sexually abuse her in his bedroom or in the living room. She said Petitioner touched her in her vaginal area on both the inside and outside, under her underwear, with his fingers. She said the abuse occurred regularly, at some points two to four times a week.

On March 30, 1999, a Coos County grand jury indicted Petitioner on twenty counts of Sexual Abuse in the First Degree. Each of the twenty counts contained the identical charging language:

> The said defendant, between the 1st day of September, 1994 and 30th day of June, 1996, in Coos County, Oregon, did unlawfully and knowingly subject [the victim] a person under the age of 14 years, to sexual contact by touching her vaginal area, a sexual or intimate part of [the victim].

Resp. Exh. 102.

On October 10, 2001, the case proceeded to a jury trial. At trial, Petitioner relied upon an alibi defense. Petitioner presented evidence through six alibi witnesses that he was gone from the home for the majority of the time that the victim claimed he abused her and, therefore, did not have the means or opportunity to commit the crimes. However, the time at which the abuse occurred was approximately five years before the trial and many of the witnesses had difficulty recalling specific dates and places. The nature of Petitioner's work at time as a mushroom and brush picker was such that he and his fellow workers were relatively transient and unstructured in their schedules. The work was dependent on conditions at a given time, and it was impossible for Petitioner to prove unequivocally that he had a complete alibi and did not have any opportunity to abuse the victim.

The victim testified that after school Petitioner would send her brothers outside to play, would lock them out of the house, and would sexually abuse her before her mother came home from work and before the boys were allowed back inside. The victim's brother testified he was locked out of the house and told to play outside and a next-door neighbor testified she would often see Petitioner's truck in the driveway and the boys playing outside in inclement weather because

3 - FINDINGS AND RECOMMENDATION -

they could not go back inside. The victim's grandmother testified to what the victim disclosed to her about Petitioner's abuse. The police officer and SCF employee also testified to the victim's disclosure of abuse, and the videotape of their interview with the victim was played for the jury. On cross-examination, Petitioner admitted he was present at the home for approximately seven months in 1994 and six months in 1995, within the time frame alleged in the indictment.

The jury convicted Petitioner on all twenty counts. The trial judge imposed consecutive sentences on counts one through eight, with concurrent sentences on counts nine through twenty, for a total term of imprisonment of 313 months.

Petitioner filed a direct appeal. Appellate counsel filed a Section A *Balfour* brief.[1] Petitioner did not file a Section B *Balfour* brief. The Oregon Court of Appeals affirmed without opinion. *State v. Weaver*, 188 Or. App. 317, 72 P.3d 126 (2003). Petitioner did not seek review from the Oregon Supreme Court.

Petitioner then sought state post-conviction relief ("PCR"). The PCR trial court appointed counsel to represent Petitioner. Following an evidentiary hearing, the PCR trial judge denied relief. On appeal, Petitioner filed a *pro se* appellant's brief. The Oregon Court of Appeals affirmed without opinion. *Weaver v. Hill*, 214 Or. App. 572, 166 P.3d 607 (2007). Petitioner was again

---

[1] A *Balfour* brief allows appointed counsel to meet the constitutional requirement of "active advocacy" without violating rules of professional conduct. Section A, signed by counsel, contains a statement of the case, including a statement of facts, sufficient to apprise the court of the jurisdictional basis for the appeal, but contains no assignments of error or argument. Section B, signed only by the appellant is a presentation of the issues the appellant seeks to raise but that counsel considers to be frivolous. *Balfour*, 311 Or. at 451-52.

represented by counsel for his petition for review to the Oregon Supreme Court, which the court denied. *Weaver v. Hill*, 343 Or. 366, 170 P.3d 1064 (2007).

On November 29, 2007, Petitioner filed his Petition for Writ of Habeas Corpus in this Court. In Section III of the Petition, he described the claims he had alleged in his state PCR proceeding as follows:

> Petitioner by and through counsel alleged that he was denied effective assistance of trial counsel in violation Aticle [sic] 1, Section 11 of the Oregon State Constitution and the 6th Amendment of the U.S. Constitution, made applicable to the states by the 14th amendment to the United States Constitution and Strickland v. Washington in the following manner:
>
> 1. Petitioner's counsel did not adequately represent or investigate the case prior to trial because trial counsel failed to object to the imposition of consecutive sentences at petitioner's sentencing hearing for counts 1, 2, 3, 4, 5, 6, 7, and 8.
>
> 2. Petitioner's counsel failed to object to the court's finding of petitioner's criminal history in counts 2, 3, 4, 5, 6, 7 and 8.
>
> 3. Petitioner's counsel failed to argue at trial and save for further appellate review the discrepancy in the alleged victim's testimony that before trial the alleged victim stated Petitioner touched her on the buttocks, but at trial the Petitioner touched her on the vagina.
>
> 4. Petitioner's counsel failed to object to the leading questions asked by the State of the alleged victim at trial.
>
> 5. Petitioner's counsel failed to subpoena for trial the following alibi witnesses who could have offered exculpatory evidence at Petitioner's trial: Linda Wearing, Cheryl Bravo, Skip Wood, Geneva Bravo, Mike Flitcroft, Larry Quillen and Delane Kennedy.
>
> 6. Petitioner's counsel failed to suppress a tape used to impeach Petitioner.

In Section IV of the Petition, Petitioner set forth the following "Grounds for Relief:"

A.    Ground One: Petitioner was denied the effective assistance of counsel in violation of the 6th and Fourteenth Amendments inasmuch as his attorney failed to properly investigate or prepare for trial.

    1.    Supporting Facts: Petitioner's attorney ignored all of Petitioner's requests and failed to contact potential witness or review the case file. The results was [sic] that his representation at trial was not complete.

B.    Ground Two: Petitioner was given consecutive sentences and in order for consecutive sentences to have been issued the facts justifying such sentences must be either admitted to or found to exist after trial by jury.

In the initial response to the Petition, and in Petitioner's Memorandum of Law in Support of the Petition, the parties addressed only the PCR claims set forth in Section III of the Petition, not the two "Grounds for Relief" in Section IV. The parties subsequently agreed the *pro se* Petition is appropriately construed as seeking relief on the six PCR grounds.

Respondent argues Petitioner procedurally defaulted all six claims for relief. In the alternative, Respondent argues the Oregon state PCR court's decision denying relief was not contrary to or an unreasonable application of clearly established law. Petitioner disputes Respondent's procedural default argument and argues that, even if the claims are procedurally defaulted, his actual innocence excuses the procedural default.

## DISCUSSION

### I.    Claim Not Alleged in Petition for Writ of Habeas Corpus

In his Corrected Memorandum of Law in Support of Petition for Writ of Habeas Corpus and subsequent filings, Petitioner argues his trial attorney was ineffective when he failed to challenge the indictment on the basis that it violated due process. In response, Respondent asserts that this claim is not properly before the Court because it was not alleged in the Petition for Writ of Habeas

Corpus as required by Rule 2 of the Rules Governing Section 2254 Habeas Petitions, 28 U.S.C. foll. § 2254.[2]

Petitioner does not (and cannot) argue that the *pro se* Petition contains this specific ground for relief. Indeed, the word "indictment" nowhere appears in the Petition. Petitioner contends, nonetheless, that the *pro se* Petition should be "liberally construed" as an attempt to conform to the claims argued by Petitioner in the state PCR proceeding. The failure to include this specific claim in the federal Petition, counsel argues, occurred through "what appears to be a scrivener's error."

Petitioner further argues Respondent belatedly raised a Rule 2 challenge to the claim in his Reply to Petitioner's Memorandum of Law instead of in Respondent's initial response. The failure to provide Petitioner with timely notice of the "perceived" Rule 2 defect in his petition "deprived him of the opportunity to timely amend or correct the petition." According to Petitioner, it would be unfair for the Court to apply Rule 2 at this stage, after the expiration of the statute of limitations. In support of this argument, Petitioner cites *Vu v. Kirkland*, 363 Fed. Appx. 439, 442 (9th Cir., Jan. 6, 2010) (unpublished):

> The advisory committee notes to Habeas Rule 2, when read together with Rule 4's requirement that a judge "promptly examine" the petition, show that filers must be

---

[2]Rule 2 provides that a Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 must:

(1) specify all the grounds for relief available to the petitioner; [and]

(2) state the facts supporting each ground.

Rule 2, Rules Governing Section 2254 Habeas Cases, 28 U.S.C. foll. § 2254.

promptly notified of obvious deficiencies in their petitions so that they can timely correct them.[3]

In the alternative, again citing *Vu*, Petitioner asserts this Court has the equitable power and discretion to accept a corrected petition *nunc pro tunc* to a timely date if it perceives a Rule 2 problem, where the Court failed to promptly examine the Petition and notify the Petitioner of the obvious deficiency and give him an opportunity to file a timely corrected pleading. Petitioner's arguments are utterly without merit and border on the absurd.

At the outset, this is not a case like *Vu* where a defect in the pleadings is obvious on the face such that the initial reviewing judge should have advised Petitioner of any deficiencies. In *Vu*, the Petitioner filed a *pro se* Petition which referred to "[a]ttachments setting forth all factual and legal grounds on which relief was sought." *Vu*, 363 Fed. Appx. at 440. The attachment, however, was missing and the petition itself did not contain <u>any</u> claims or factual grounds upon which they were based. As the Ninth Circuit noted, the petition "was grossly defective" in that it "utterly failed to identify [petitioner's] legal claims and the factual grounds on which they rested." *Id*. at 441. Here, the *pro se* Petition was not grossly defective. Instead, it contained separate concise statements of the grounds for relief pursued in the state PCR proceeding and the grounds for relief Petitioner sought to assert in this action. As such, the Petition was not subject to summary dismissal under Rule 4.

---

[3]Pursuant to Rule 4 of the Rules Governing Section 2254 Habeas Cases, 28 U.S.C. foll. § 2254, the judge assigned to a habeas case must promptly examine the petition and, "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner."

Further, the onus is not on Respondent for delay in asserting a Rule 2 challenge to Petitioner's claim. Petitioner filed his *pro se* Petition in this Court on November 29, 2007. On December 10, 2007, having undertaken the review required by Rule 4 and having determined that it did not plainly appear on the face of the Petition that Petitioner was not entitled to relief, Magistrate Judge Donald C. Ashmanskas issued a Habeas Corpus Scheduling Order Serving [the] Petition for Writ of Habeas Corpus on Respondent.[4]

Petitioner did not immediately seek appointment of counsel; he did not file a motion requesting counsel until June 2, 2008. On June 4, 2008, this Court granted Petitioner's motion and appointed Federal Public Defender Steve Wax to represent Petitioner. In the Order appointing counsel, the Court ordered the Clerk to send a copy of the Petition to Petitioner's attorney with the expectation that counsel would review it and, if necessary or appropriate, move to file an amended petition. On July 9, 2008, current counsel filed a Notice of Attorney Substitution.

On October 14, 2008, Respondent filed an Answer and Response addressing the six claims for relief set forth above. The Court then granted Petitioner four 90-day extensions of time to file his brief in support of the Petition. On October 26, 2009, Petitioner filed a Memorandum in Support of Petition for Writ of Habeas Corpus in which he argued, for the first time in this Court, that trial counsel was ineffective when he failed to challenge the indictment. On April 5, 2010, Respondent filed his reply challenging Petitioner's failure to include the claim in his Petition.

Before Petitioner filed his Memorandum Respondent did not have any basis to argue Rule 2 precluded Petitioner's claim counsel was ineffective for failing to challenge the indictment;

---

[4]Judge Ashmanskas subsequently retired, and the case was re-assigned.

9 - FINDINGS AND RECOMMENDATION -

Respondent had no reason to believe Petitioner was asserting anything other than the claims alleged in his Petition.  Moreover, the Court rejects Petitioner's argument that the *pro se* petition can be construed, when viewed in conjunction with the PCR record, as alleging a claim that trial counsel was ineffective for failing to challenge the indictment.  Certainly, *pro se* pleadings are to be liberally construed and held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, Petitioner does not cite, and this Court could not locate, any authority for the proposition that the entire state PCR record must be consulted in order to construe a petition as alleging a claim not set forth therein.[5]

In any event, Petitioner is no longer *pro se*.  After counsel's appointment and review of the Petition, and even after Respondent answered the Petition identifying the specific claims raised in that Petition and their deficiencies, counsel did not attempt to rectify the pleading error until more than one year later.

Finally, in the alternative to liberally construing the Petition to allege the claim Petitioner now argues, counsel asks the Court to accept a "corrected" petition *nunc pro tunc* to a timely date. Again, Petitioner's reliance on the Ninth Circuit's decision in *Vu* to support this request is misplaced.  In *Vu*, the court emphasized that "where an error *by the district court* contributes to a

_____

[5]Petitioner would have the Court look not only to the state PCR petition to ascertain what claims he pursued in that action, but also to Petitioner's deposition testimony, testimony at the PCR trial, and *pro se* documents submitted by Petitioner throughout the PCR proceeding.  As counsel concedes, Petitioner did not explicitly allege ineffective assistance of counsel for failure to challenge the indictment; his PCR Petition simply alleged counsel was ineffective  for failure to "investigate the underlying matters that resulted in petitioner's convictions and never gave petitioner a copy of the indictment."  Instead, Counsel suggests the Court should read this allegation in conjunction with statements made in Petitioner's deposition testimony and PCR appellate brief to ascertain what Petitioner intended to argue in state court and, by extrapolation, in his habeas action in this Court.

petitioner's untimely filing, the district court has the equitable power to right its own wrong by accepting the untimely petitioner *nunc pro tunc* to a timely date." *Vu*, 363 Fed. Appx. at 442 (citing *Anthony v. Cambra*, 236 F.3d 568, 574 (9th Cir. 2000) ) (emphasis supplied).  As noted previously, the district court erred in *Vu* by not timely advising the petitioner of his utter failure to comply with Rule 2.  No such error occurred here.

In addition, Petitioner's request to "correct" the Petition *nunc pro tunc* does not comply with Local Rule 15-1(d) which requires a party moving to amend a pleading to append a copy of the proposed amended pleading to a formal motion to amend.  Instead, the request is contained on page 9 of Petitioner's 25-page Sur-Reply in Support of Memorandum of Law in Support of Petition for Writ of Habeas Corpus.  In a recent similar situation, the Honorable Michael W. Mosman of this Court rejected just such an attempt to amend a habeas petition:

> Absent a formal motion to amend, the court is placed in the unconventional position of reading each and every brief filed in all of its cases on the day that each brief is filed (and when the case is not under advisement) to determine whether there is an undocketed request requiring an immediate ruling in order to safeguard a litigant from a procedural pitfall.  This would defy traditional motions practice, and the court should certainly not be put to this burden where it has elected to appoint counsel.

*Marquette v. Belleque*, Civ. No. 09-624-MO, 2010 WL 4235889, *2 (D. Or. Oct. 20, 2010).  This Court agrees with Judge Mosman's reasoning.

Petitioner did not allege in his Petition for Writ of Habeas Corpus that trial counsel provided constitutionally ineffective assistance of counsel by failing to object to the indictment.  As such, the claim is not properly before this Court.  *See* Rule 2(c), Rules Governing Section 2254 Proceedings, 28 U.S.C. foll. § 2254 (requiring each habeas petition to specify all grounds for relief);

*Green v. Henry*, 302 F.3d 1067, 1070 n.3 (9th Cir. 2002) (claims not raised in the petition need not be considered); *Marquette*, 2010 WL 4235889 at *2 (same); *Callendar v. Hall*, Civ. No. 07-1099-KI, 2010 WL 1450524, *10 n.5 (D. Or. April 08, 2010) (same).

## II.    Procedural Default

### A.    Legal Standards

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1). A state prisoner satisfies the exhaustion requirement by fairly presenting his claim to the appropriate state courts at all appellate stages afforded under state law. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Casey v. Moore*, 386 F.3d 896, 915-56 (9th Cir. 2004), *cert. denied*, 545 U.S. 1146 (2005); *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir.1999).

A state prisoner procedurally defaults his available state remedies in one of two ways. First, he may fail to exhaust, or fail to "fairly present," the federal claim to the state court, and the procedural default is caused by the fact that the state court would now find the claims procedurally barred. *Coleman v. Thompson*, 501 U.S. 722, 729 n. 1 (1991); *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Casey*, 386 F.3d at 920-21. Second, a federal claim is procedurally defaulted if it is actually raised in state court, but explicitly rejected by the court based upon a state procedural law. *Cone v. Bell*, 129 S. Ct. 1769, 1780 (2009); *Coleman*, 510 U.S. at 729-30. Federal habeas relief is precluded in these cases provided the state law invoked is independent of the federal question and adequate to support the judgment. *Coleman*, 501 U.S. at 720-30; *Lee v. Kemna*, 534

U.S. 362, 375 (2002); *Sechrest v. Ignacio*, 549 F.3d 789, 802 (9th Cir. 2008), *cert. denied*, 130 S. Ct. 243 (2009).

If a petitioner procedurally defaults his federal claims in state court, federal habeas relief is precluded absent a showing of cause and prejudice, or that the failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750; *Cook v. Schriro*, 538 F.3d 1000, 1025 (9th Cir. 2008), *cert. denied*, 129 S. Ct. 1033 (2009).

A "fundamental miscarriage of justice" occurs when a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007), *cert. denied*, 129 S. Ct. 31 (2008); *see also Murray v. Carrier*, 477 U.S. 478, 496 (1986). In this context, the claim of actual innocence is procedural because it allows "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Schlup v. Delo*, 513 U.S. 298, 315 (1995); *Smith*, 510 F.3d at 1139-40. To pass through the Schlup gateway, a petitioner must show that, "in light of all available evidence, it is more likely than not that no reasonable juror would convict him of the relevant crime." *Smith*, 510 F.3d at 1140; *House v. Bell*, 547 U.S. 518, 536-38 (2006). This standard ensures a petitioner's case is truly "extraordinary" while providing a meaningful way to avoid a manifest injustice. *House*, 547 U.S. at 538; *Schlup*, 513 U.S. at 327; *see also Smith*, 510 F.3d at 1127.

To meet this standard, the claim must be supported by "new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324; *Pinnell v. Belleque*, 638 F. Supp. 2d 1231, 1246 (D. Or. 2009). The new evidence may be "newly presented" evidence of actual

innocence, which may include evidence that was in petitioner's possession prior to trial, but never

offered prior to accepting his plea bargain. *Griffin v. Johnson*, 350 F.3d 956, 963 (9th Cir. 2003),

cert. denied, 541 U.S. 998 (2004).

**B.**    **Analysis**

In his formal state PCR Petition, Petitioner alleged each of the grounds for relief at issue

in this habeas corpus action.   However, on appeal from the PCR trial court's denial of relief

Petitioner submitted a *pro se* Appellant's Opening Brief in which he identified the following seven

specific assignments of error:

1. The trial court failed to access the adequacy of notice.
2. Counsel was ineffective in preventing the prosecution from withholding exculpatory evidence, favorable and impeachment evidence from the defense, that had counsel done so, there is a great probability that the results of the trial would have been different and that they would have been reasonable more favorable for the defendant.
3. The cumulative effect of multiple errors may prejudice the defense.
4. Error on its face that the law at the time of conviction is different then [sic] the law at the time of appeal.
5. There is erroneous application of the law because the law at the time of conviction is different then [sic] the law is now at the time of appeal.
6. It was prejudicial to the defense when prosecutor gave the jury an erroneous jury instruction.
7. The prosecutor violated petitioner's due process rights when she inadvertently withheld exculpatory evidence "Brady" evidence from the defense.

Resp. Exh. 120, pp. ii-v.  Petitioner's Opening Brief also identified nine "questions presented:"

1. Does because [sic] the error did not become apparent until appeal bar relief?
2. Does the imposition of longer sentences due to district court's error effect substantial rights?
3. Can prejudice arise from joining strong case with weaker case?
4. (1) What can the jury's decision be based upon?

(2) Is any suggestion in and during closing arguments that jury may base it's decision upon a "higher law" than that of the court in which it sits forbidden?

5. What constitutes an improper instruction?

6. Are rights generally guaranteed by United States constitution primarily negative in character?

7. Can internal agency regulations between separate offices of the prosecutor's access legitimate violations of rights?

8. Can applying the harmless error standard to erroneous admission of evidence in the "Roberts Standards" which has been abrogated by "Crawford" have injurious effects on the conviction?

9. Concerning changing of disciplinary and punishment when do they become paramount to the point that Federal Constitutional Rights intervene?

Resp. Exh. 120, p. 9. The body of the Brief itself consists mostly of a series of case citations, with largely incomprehensible arguments interspersed throughout. Nowhere in the Brief did Petitioner address the claims for relief set forth in his PCR Petition or in this habeas action.

As part of Petitioner's "Supplemental Excerpt of Record," he included pages one and three of his formal PCR Petition, as well as the two-page Trial Memorandum submitted to the PCR trial court.[6] Petitioner does not incorporate either of these documents by reference in his Brief; indeed, other than their inclusion in his "Supplemental Excerpt of Record" index, the documents are not mentioned at all.

Petitioner argues, nonetheless, that the Court must liberally construe Petitioner's *pro se* Opening Brief to include the claims alleged in his PCR petition and, as such, the claims were fairly

---

[6]Petitioner posits that the copy of the Brief filed by Respondent is incomplete, because Petitioner's version attached the entire PCR Petition. The Court notes, however, that Petitioner qualified his attachments to his Brief with the following statement: "On some Appendix's designated above, only the front page has been supplied, because of adherence [sic] to O.R.A.P. 5.50 - 50 page rule - as ordered by Chief Judge David V. Brewer." Resp. Exh. 120, p. vii. In any event, as discussed below the extent of the attachment is not relevant, as the Petition was not incorporated into the Brief.

presented to the Oregon Court of Appeals. The Court disagrees. Attachment of a PCR Petition as

an excerpt of the record, without other reference thereto, does not suffice to "fairly present" the

claims reference in the PCR Petition to the Court of Appeals. *See Tardy v. Belleque*, Civ. No. 09-

424-BR, 2011 WL 722773 *5 (D. Or. Feb. 23, 2011); *Ayala v. Mills*, Civ. No. 09-392-KI, 2010 WL

3945220, *3 (D. Or. Oct. 5, 2010). As such, Petitioner did not exhaust the six grounds for relief

currently before this Court. Because Oregon rules prevent him from now doing so, he procedurally

defaulted all of the claims properly before this Court.[7] In any event, even if the claims were not

procedurally defaulted, Petitioner is not entitled to relief on the merits of the claims, as discussed

below.

## III.    Relief on the Merits

### A.    Legal Standards

Under 28 U.S.C. § 2254(d)(1), habeas corpus relief may not be granted on any claim that

was adjudicated on the merits in state court, unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established federal law, as determined by the Supreme Court
> of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

---

[7]Petitioner argues any procedural default is excused by his actual innocence. *See Schlup*. Petitioner does not, however, present "new reliable evidence . . . that was not presented at trial" to show that "in light of all available evidence, it is more likely than not that no reasonable juror would convict him of the relevant crime." *Schlup*, 513 U.S. at 324; *Smith*, 510 F.3d at 1140. The "new evidence" provided by Petitioner in this action consists of character evidence cumulative to that presented at trial.

A state court decision is not considered "contrary to" established Supreme Court precedent unless it "applies a rule that contradicts the governing law set forth in [Supreme Court cases]" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003). A federal habeas court cannot overturn a state decision "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. 362, 409 (2000). Instead, habeas relief may be granted only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

An "unreasonable application" of clearly established Supreme Court law occurs when "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the ... case." *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004) (citing *Williams*, 529 U .S. at 413), *cert. denied*, 546 U.S. 963 (2005). "'Clearly established Federal law' is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lambert*, 393 F.3d at 974.

A federal court considering a habeas petition must also give considerable deference to a state court's factual findings. "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court

proceedings, § 2254(d)(2)." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. *Lambert*, 393 F.3d at 976-77.

In conducting a review under § 2254, this Court must look to the last reasoned state-court decision. *Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003) (citing *Franklin v. Johnson*, 290 F.3d 1223, 1233 n. 3 (9th Cir. 2002)), *cert. denied*, 541 U.S. 1037 (2004). A written decision from the state court explaining the state court's reasoning, however, is not necessary to determine whether a state court's decision resulted from an unreasonable legal or factual decision. *Harrington*, 131 S. Ct. at 784-85.

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 790 (citations omitted).

To prove a deficient performance of counsel, a petitioner must demonstrate that trial counsel "made errors that a reasonably competent attorney as a diligent and conscientious advocate would not have made." *Butcher v. Marquez*, 758 F.2d 373, 376 (9th Cir. 1985). The test is whether the assistance was reasonably effective under the circumstances, and judicial scrutiny must be highly deferential, with the court indulging a presumption that the attorney's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

To establish the second prong of the Strickland test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In determining whether a defendant was prejudiced by ineffective assistance of counsel, the court should examine whether the "'result of the proceeding was fundamentally unfair or unreliable.'" *United States v. Palomba*, 31 F.3d 1456, 1460-61 (9th Cir. 1994) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 368 (1993)).

**B.    Analysis**

**1.    Sentencing**

In his first two claims, Petitioner alleges counsel was ineffective for failing to object to the imposition of consecutive sentences and for failing to object to "the court's finding of petitioner's criminal history in counts 2, 3, 4, 5, 6, 7 and 8." To the extent Petitioner's consecutive sentence argument is based upon an alleged violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004), his claim is without merit. *See Oregon v. Ice*, 129 S. Ct. 711 (2009) (consecutive sentences may be imposed without having submitted the facts supporting them to a jury for decision).

Petitioner's argument that trial counsel was ineffective for failing to object to his criminal history is also without merit. Petitioner was convicted of twenty separate counts of Sexual Abuse in the First Degree. Although not a model of clarity in pleading, the indictment alleged that each count was a separate and distinct act, spanning a period of almost two years. As each crime arose from a separate and distinct act, the trial judge correctly moved Petitioner up the gridblock for each subsequent count. *See State v. Allen*, 151 Or. App. 281, 289, 948 P.2d 745 (1997) (where defendant

was charged in a single indictment with acts committed on three separate dates, conviction on first charge may be treated as prior criminal history for purposes of sentencing on the other charges).

The PCR trial judge rejected Petitioner's claim that counsel was ineffective for failure to object at sentencing. That decision was not contrary to or an unreasonable application of *Strickland*, and this Court cannot conclude there is "no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents as reasonable jurists." *Harrington*, 131 S. Ct. at 786. Accordingly, Petitioner is not entitled to habeas corpus relief on the sentencing claims.

### 2.    Discrepancy in Victim's Description

In his third claim, Petitioner alleges trial counsel was ineffective for failing to argue and trial and preserve as error for further appellate review the discrepancy in the victim's testimony.[8] Before trial, Petitioner argues, the victim stated Petitioner touched her on the buttocks, but at trial she testified Petitioner touched her on the vagina.

As the trial record reveals, the victim's statements were not contradictory. When she was interviewed as part of the investigation before trial, she described being touched on her bottom. The victim used the word "bottom" to describe both her vaginal area and her buttocks. When asked by the SCF caseworker to point on a diagram to the area Petitioner had touched her, the victim pointed to the vaginal area. At trial, the victim (now three years older than when the investigation took place) specifically identified the area touched by Petitioner as her "vaginal area."

---

[8]Petitioner does not address his third or sixth claims for relief in the legal memoranda filed herein.

The PCR court's decision denying relief on Petitioner's third claim was not contrary to or an unreasonable application of *Strickland*. Because the victim's statements were not contradictory, it would not have been reasonable for trial counsel to object. Moreover, Petitioner could not have been prejudiced by the lack of objection. Accordingly, Petitioner is not entitled to relief on this claim.

### 3.   Leading Questions

In his fourth claim, Petitioner alleges counsel failed to object to the State asking leading questions of the victim at trial. In the state PCR proceeding, when asked at his deposition to identify specific areas of the transcript where he felt the State asked leading questions of the victim and how he was prejudiced by these questions, Petitioner was unable to do so. Here, without identifying the specific leading questions allegedly asked, Petitioner argues the victim's answers estimating the abuse occurred "about two to four times a week" during "almost every week" Petitioner was home for a total of "around twenty or more times" were objectionable. Petitioner contends prejudice ensued because the trial court permitted twenty convictions to stand based on this estimate.

Upon an independent review of the trial record, this Court concludes the PCR court's denial of relief on this claim was not contrary to or an unreasonable application of *Strickland*. Even if some of the prosecutor's questions were leading, Petitioner has not shown that the testimony would have been inadmissible if elicited through non-leading questions. As such, Petitioner has not established prejudice, and is not entitled to relief on this claim.

### 4.    Additional Alibi Witnesses

In his fifth claim, Petitioner alleges trial counsel failed to investigate the underlying matters of his case and subpoena seven specific alibi witnesses to his trial.  In the PCR proceeding, Petitioner failed to present any testimony or evidence from these witnesses to support his claims of ineffectiveness of counsel.[9]  By contrast, the State presented evidence from Petitioner's trial counsel who hired an investigator to track down numerous defense alibi witnesses.  At trial, to develop and present the defense that Petitioner was gone from the home working for the majority of the time the victim claimed he abused her, counsel did present six alibi witnesses, a time line prepared by the victim's mother about Petitioner's work practices, and Petitioner's own testimony.

Upon an independent review of the record, in the absence of any testimony or evidence from the proposed seven additional alibi witnesses, the PCR trial court's decision to deny relief on Petitioner's fifth claim for relief was not contrary to or an unreasonable application of *Strickland*. Accordingly Petitioner is not entitled to relief on this claim.

### 5.    Failure to Suppress Tape

In his sixth claim, Petitioner alleges trial counsel was ineffective for failing to move to suppress a videotape of the victim's interview with the police officer and SCR worker which was presented at trial.  All three individuals who were presented on the videotape testified at trial and

---

[9]Petitioner submits evidence in this action that was not presented in the state PCR proceedings of three of the seven identified witnesses' knowledge of Petitioner's character, whereabouts, and work schedule during the time in question.  This evidence, however, is not properly before this Court as an expansion of the record under Rule 7 of the Rules Governing § 2254 Cases, as Petitioner has met the standard for an evidentiary hearing, as discussed below.  *See Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1241 (9th Cir. 2005) (before the record may be supplemented with new evidence, a petitioner must meet the same standard that is required by an evidentiary hearing), *cert. denied*, 546 U.S. 944 (2005).

were cross-examined by Petitioner's attorney. Petitioner fails to identify any other basis upon which the tape may have been suppressed. As such, he has not established trial counsel was ineffective, and the PCR court's decision denying relief on this claim was not contrary to or an unreasonable application of *Strickland*.

## IV.    Request for Evidentiary Hearing

Finally, if the Court does not grant habeas relief on the Petition, Petitioner seeks an evidentiary hearing. A petitioner is not entitled to an evidentiary hearing in a habeas proceeding to further develop the merits of his claim unless he diligently attempted to develop the evidence in state court, but was unable to do so. *Williams v. Taylor*, 529 U.S. 420, 433-38 (2000). If a petitioner failed to diligently develop the evidence, an evidentiary hearing is permitted only if the claim relies on: (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable; or (2) a factual predicate that could not have been previously discovered through the exercise of due diligence. 28 U.S.C. § 2254(e)(2)(A)(I) and (ii). In addition, the facts underlying the claim must be sufficient to establish by clear and convincing evidence that no reasonable fact finder would have found the petitioner guilty of the underlying offense. 28 U.S.C. § 2254(e)(2)(B).

Petitioner's request for an evidentiary hearing should be denied. Other than the evidence that additional alibi witnesses may have been available, Petitioner does not offer proof as to the evidence he would seek to present in an evidentiary hearing. More important, Petitioner does not present reason why he did not present such evidence during his state PCR proceedings.

## RECOMMENDATION

For these reasons, the Petition for Writ of Habeas Corpus should be DENIED, the alternative request for an evidentiary hearing should be DENIED and a judgment of DISMISSAL should be entered. A certificate of appealability should be DENIED, as Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due April 8, 2011. If no objections are filed, review of the Findings and Recommendation will go under advisement that date.

A party may respond to another party's objections within 14 days after the objections are filed. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.

DATED this ___ day of March, 2011.

_____
John V. Acosta
United States Magistrate Judge

24 - FINDINGS AND RECOMMENDATION -